Good morning, Your Honors. Steve Feldman for Mr. Gouse. May I have two minutes for rebuttal? Yes, you may. Thank you, Your Honor. Your Honors, the United States government violated the Interstate Agreement on Detainers when Mr. Gouse was returned to Massachusetts from the District of Rhode Island before the federal charges were finally resolved in the District of Rhode Island. Once the detainer was filed and the federal warrant has been interpreted as a detainer, the government had an obligation to keep Mr. Gouse in the District of Rhode Island until the charges were completely resolved. Is that correct? I don't follow that. The way I read the statute, they can bring him to Rhode Island, the federal government can bring him to Rhode Island. They can keep him there and try him. That's one choice. Second choice is they can send him back without trying him and dismiss the case with prejudice, which is what the state would have to do. Third is they could send him back without trying him, and if they're the federal government, dismiss the case without prejudice. Aren't those the three choices? And here it was dismissed without prejudice over objection, but... So the federal government was following the rules and it dismissed without prejudice, which to me means they can bring the charge again. No, Your Honor, that's not correct. Because the government had an obligation once the detainer was filed to act in accordance with the rules of the detainer. And what the government did was they sought a writ of habeas corpus ad prosequendum, and that is not covered by the IAD. But once that detainer was filed, ab initio, from the beginning in this case, that governed the balance of this case. And this case is remarkably similar to United States v. Knight in the 11th Circuit, where the same exact situation occurred. It's 562 F. 3rd, 1314. Is that in your brief? Yes, it is. And the government doesn't distinguish that case at all, but rather what the government does is it structures its argument as old case, new case. But in reality, the case law on IAD says there is one case, there is one defendant, and one charge. I'm still lost on this point, and see if you can help me. It seems to me that you're saying that once they brought him to Rhode Island, once the federal government brought him to Rhode Island, they either had to try him then, or they could never try him for that crime. It seems to me that's what you're saying. In other words, if they sent him back without a trial, you seem to say that was it. No, they could. I agree that they could. He was still triable, but the government had to proceed under the rules of a detainer and the IAD. What they couldn't do is do an end run around the IAD by using the writ, knowing full well that's not covered. So tell me how they would have, if they brought him to Rhode Island, sent him back, dismissed without prejudice, what should they have done, under your view, if they wanted to still try him? They should have filed a subsequent, they should have acted in accordance with the initial detainer. Which means what? Use that detainer to bring Gauss back to Rhode Island. And why does it make any difference whether they brought him back with a letter saying please send him back? Because of the rules of the IAD. What the government did in using the writ was they went around the IAD in the second case. How did they end up in a different place? Because there have been cases which talk about the IAD being followed precisely. And precisely means acting in accordance with the initial federal warrant which was a detainer for Mr. Gauss in Massachusetts. The problem with the IAD violation in this case is that it violated the anti-shuttling rules of the IAD. The defendant was brought to Rhode Island on the detainer. He was then sent back to Massachusetts. And without the federal charges finally being resolved. And that is the problem that the IAD was designed to prevent. The shuttling. Now you've confused me again because I thought you just told me they could have shuttled him back. I didn't say shuttled. They could have returned him in accordance with the rules of the initial detainer that they filed. They could have brought him to Rhode Island. Sent him back to Massachusetts. Dismissed without prejudice. Then if I understand your argument they could have brought him back to Rhode Island again as long as they did it with a detainer and then tried him at that time. Yes. So there you have, it seems to me, shuttling. The only difference is they brought him back under your scenario which you say is okay with the detainer. But here they brought him back with a RIP. That's correct. And what's the difference? How does that affect him? How does that have any effect on him? Well, it affects him because the IAD has certain rules and the government circumscribed the rules by using a RID in the second indictment. And which one caused your client any prejudice? Which rules should have been followed? The rules on the IAD which discuss the anti-shuttling violations have to do with institutional programs and the interference with those programs. And but none of the cases talk about specifics about which programs have been interfered with. It's just a general rule that the defendant should not be shuttled from Rhode Island to Massachusetts before the charges are finally resolved. So if we ask the question this way, if it had been done the way you say it should have been done, how would your client's life over the last several years have been any different at all? Your Honor, this record does not contain evidence of which institutional programs were interfered with. But that's the ill that the IAD is intended to prevent. So you say we don't know but it might have been and he shouldn't have to prove it now in hindsight. The IAD stands for simple anti-shuttling proposition that in general terms a prisoner's right should not be violated for whatever institutional programs in which he's involved in his facility. I think your time is up. Thank you very much, Your Honors. Good morning, Mr. Lockhart. Good morning. So our position is that there was no anti-shuttling violation because in the new case we brought him into Rhode Island where he was detained at the Wyatt Federal Detention Center. We tried him and went right through sentencing before returning him to Massachusetts. So there's no shuttling violation in the new case. What I think the defense may be saying is that in the old case when we dismissed that or when the court dismissed that without prejudice, we somehow should have held him in Rhode Island without any charges pending re-indictment in the new case that maybe we shouldn't have sent him back to. That could be the point the defense has made. It's not clear from the brief oral argument. I'm sort of speculating here. But the question then is how on earth could we have held this defendant in a federal prison without any pending charges against him? Essentially, you would have a situation where the government would be forced to make a decision within seconds, I guess, to have a new indictment ready in the new case. Now, there's no case law that supports that. The Knight decision decided or cited by the defense at page 24 of its brief doesn't address that issue. It addresses a different issue. And so our position is you have to look at this in terms of the old and new cases. The old case was dismissed without prejudice. There's no contention on appeal that that ruling was in error. And if there is such a contention, it's wrong because the court didn't abuse its discretion in deciding that the case should be dismissed without prejudice. In the new case, we fully complied with the IAD anti-shuttling provision in that we took him into the federal system and we processed him right through trial, conviction, and sentencing before sending him back to Massachusetts. So if there's no anti-shuttling violation, there's no basis to dismiss the indictment, even if, assuming arguendo, the IAD applies to federal warrants that are lodged at state prisons. The point of our brief was to say you can avoid looking at that threshold question of the IAD's applicability to state warrants, and you can avoid the question of under what circumstances are detainers withdrawn or lifted, or at what point do they just go away if the underlying charges are dismissed. Assume the IAD applies here, and even under that assumption, there's just no shuttling violation. So there's no basis for dismissing the indictment. I seem to hear the argument from Mr. Feldman that once you start moving a prisoner around with a detainer, if you're going to move him again, the same prisoner, you need to use the detainer again because it triggers certain rights that he might otherwise have. Well, there are two problems with that. First of all, he's not giving any content to when he says you have to use the detainer. What does that even mean? I think embedded in there may be the notion that you have to comply with other IAD provisions, such as the 30-day window in which a state governor could, in theory, block a transfer. If that's the contention that's being made, and it's very hard to know what contentions are being made in this case, the Plew-on-Bonk decision delivers that, I would say, a knockout blow. The Plew-on-Bonk decision says when the federal government uses the writ paevis corpus ad prosequentum, a state governor has no power to ignore that writ. And if there are other elements of the IAD process here that were infringed on, there's a related question of what would the remedy even be. The statute is set up so that it only provides a remedy for indictment dismissal under two circumstances. One is the Speedy Trial Act component of the Interstate Agreement on Detainers Act, which isn't relevant to this case. And the other situation is the anti-shuttling violation, which is the contention here in this appeal. There's no other provision of the IAD that says you can dismiss an indictment for failure to comply with some interstitial or technical aspect of the IAD or detainers. There are just these two indictment dismissal scenarios. There's no contention that there's a violation of the IAD Speedy Trial Act. The only contention is the anti-shuttling provision was violated, and it clearly wasn't. So there's no basis to dismiss the indictment under those circumstances. If there are no further questions, we'll rest on our brief. Thank you. You have two minutes. Thank you, Your Honors. The government's position is at odds with the simple rule that the IAD has to be strictly followed. And once the detainer was lodged in the beginning of the case, that is what alone had to be used in this case. Thank you very much. Thank you.